IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION

CLERKS OFFICE U.S. DIST. COURT
AT ABINGDON, VA
FILED
September 30, 2025
LAURA A. AUSTIN, CLERK
BY: s/ FELICIA CLARK
      DEPUTY CLERK

| | |
|---|---|
| **TIFFANY NGO, ADMINISTRATOR OF THE ESTATE OF BROOKE WINEK, DECEASED,** | )<br>)<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Case No. 1:24CV00031 |
| **WASHINGTON COUNTY, VA SHERIFF BLAKE ANDIS, in his official and personal capacities, et al.,** | )<br>)<br>)<br>)<br>) |
| Defendants. | ) |

| | |
|---|---|
| **R.K.W., a minor by and through Her NEXT FRIEND, TIFFANY NGO,** | )<br>)<br>) |
| Plaintiff, | )<br>)<br>) |
| v. | ) Case No. 1:24CV00032 |
| **WASHINGTON COUNTY, VA SHERIFF BLAKE ANDIS, in his official and personal capacities, et al.,** | )<br>)<br>)<br>)<br>) |
| Defendants. | ) |

**OPINION AND ORDER**

    *Scott M. Perry, BREIT BINIAZAN, P.C, Arlington, Virginia, for Plaintiff; Nathan H. Schnetzler, FRITH ANDERSON + PEAKE, P.C., Roanoke, Virginia, for Defendant Sheriff Blake Andis.*

Austin Lee Edwards, as a recently hired deputy of Washington County, Virginia, Sheriff Blake Andis, participated in an online relationship with a teenage girl in California who believed him to be a teenage boy. In November 2022, he drove to her home from Virginia, and posing as a police officer, gained entrance to the residence and murdered her mother and grandparents before abducting the young girl. Edwards eventually killed himself and the child was rescued. As a result of these events, representatives of the deceased mother, Brooke Winek, and of the daughter, R.K.W., have filed similar actions against Sheriff Andis, asserting claims under 42 U.S.C. § 1983 and Virginia law based on allegations that Edwards was insufficiently screened before being hired. It is contended that had Edwards' application been properly considered or easily available information about him been obtained and considered, he would have not been hired, and the tragic events would not have occurred. The plaintiffs each seek fifty million dollars in damages.[1]

Sheriff Andis has moved to dismiss each case, alleging both a lack of jurisdiction and failure to state a claim. Fed. R of Civ. P. 12(b)(1), (6). For the

---

[1] The cases were originally filed in the United States District Court for the Eastern District of Virginia on February 2, 2024, but transferred to this District later that year. Before the transfer, the plaintiff voluntarily dismissed as defendants the Washington County, Virginia, Sheriff's Office, as well as another employee of Sheriff Andis, Detective William Smarr. The administrator of Edwards' estate remains a party defendant in each case, but while served with process, has not appeared or filed a response.

reasons that follow, Andis' Motions to Dismiss will be granted and the claims against Andis dismissed without prejudice.[2]

## I. FACTS ALLEGED.

The following facts are alleged and must be taken as true for the purposes of the Motions to Dismiss.

Austin Lee Edwards worked as a Virginia State Trooper from January 2022 until his resignation on October 28, 2022. In November 2022, he applied for employment with Sheriff Andis. Edwards' application listed three references. Edwards failed to respond to several application questions, including whether he had a weapons permit, whether he had been convicted of a crime, whether he had been questioned by law enforcement, whether he had ever been detained, whether he had ever acted violently toward another person, and whether he had ever been the subject of a civil restraining order, protection order, or contact order. Sheriff Andis' policies and procedures required that applicants respond to these questions.

Several years before he was hired, Edwards had been taken into custody following a psychiatric episode during which he injured himself and threatened to kill both himself and his father. A local court approved Edwards' temporary

---

[2] I have dispensed with oral argument because the factual allegations and arguments are adequately presented in the materials before the Court, and a hearing would not significantly aid the decisional process.

detention in a psychiatric facility. During this time, the court issued a treatment order that barred Edwards from purchasing, possessing, or transporting firearms. The court sent the order to the Virginia Central Criminal Records Exchange (CCRE). In accordance with Virginia law, Edwards was prohibited from possessing a firearm until his gun rights were restored. Edwards' gun rights were never restored.

Detective Smarr, an employee of Sheriff Andis, was tasked with the review of Edwards' application. Smarr never spoke with any of the three references Edwards provided. Smarr did speak with a representative from the Virginia State Police. However, the representative declined to discuss Edwards. Smarr claims that he conducted an FBI record check, as well as checks of the National Crime Information Center, the Virginia Criminal Information Network, and CCRE. The plaintiff alleges that Smarr did not check CCRE, and that if he had, he would have discovered that Edwards had been previously detained for psychiatric evaluation.

In addition, Edwards failed the Sheriff's administered polygraph examination. The Sheriff's policies and procedures mandated that applicants pass a polygraph examination or show a reasonable explanation as to the applicant's failure, but no such explanation was provided.

Despite the omissions in Edwards' application and the lack of information from references, Edwards was hired by Sheriff Andis as a deputy on November 16,

2022. He was issued a badge and a service weapon, in violation of the judicial order prohibiting Edwards from possessing a gun.

On November 25, 2022, fewer than two weeks after Edwards began work, he traveled to Riverside, California. Previously, Edwards had created a fake online profile in which he had posed as a 17-year-old boy (Edwards was actually 28). Using this profile, he had met R.K.W., a 15-year-old girl living in Riverside. Edwards had been communicating with R.K.W. during the summer and fall of 2022 and had learned of her home address, which he drove to.

When Edwards arrived at R.K.W.'s residence, Sharon and Mark Winek, R.K.W.'s grandparents, were the only persons home at that time, and Edwards showed them his badge and issued service weapon. He claimed he was conducting an investigation and needed entry. Edwards then directed Sharon to call Brooke Winek, Sharon's daughter and R.K.W.'s mother, and inform Brooke that she and R.K.W. needed to return home immediately because a detective had come to the home to discuss an incident involving R.K.W. At Edwards' instruction, Sharon then called Brooke's sister and told her to remind Brooke to leave her mobile phone and R.K.W. in the car, so that Edwards could question Brooke and R.K.W. separately. When Brooke arrived, she followed those instructions and went inside, leaving R.K.W. and her mobile phone in the car.

After waiting for some time, R.K.W. entered the home to find her grandparents and mother on the floor, bound with bags taped over their heads. Edwards pulled R.K.W. into his car at gunpoint and set fire to the home. Edwards then began driving back towards Virginia. Law enforcement eventually chased Edwards down and Edwards allowed R.K.W. to get out of the car. Edwards then killed himself with his service weapon. R.K.W. was not physically injured. Sharon, Mark, and Brooke Winek died because of Edwards' actions.

## II.  STANDARDS OF REVIEW.

When a party moves to dismiss for lack of subject-matter jurisdiction and for failure to state a claim, the court must address the question of subject-matter jurisdiction first. *Bell v. Hood*, 327 U.S. 678, 682 (1946). The party asserting federal jurisdiction bears the burden of proving jurisdiction. *See Richmond, Fredericksburg & Potomac R.R. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). A district court must grant a Rule 12(b)(1) motion to dismiss "if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id.* at 768.

Eleventh Amendment "sovereign immunity deprives federal courts of jurisdiction to hear claims, and a court finding that a party is entitled to sovereign immunity must dismiss the action for lack of subject-matter jurisdiction." *Cunningham v. Gen. Dynamics Info. Tech., Inc.*, 888 F.3d 640, 649 (4th Cir. 2018)

(citation omitted).  Such immunity extends not only to states, but also to state agents and instrumentalities, otherwise known as "arm[s] of the state."  *Cash v. Granville Cnty. Bd. of Educ.*, 242 F.3d 219, 222 (4th Cir. 2001).

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint to determine whether the plaintiff has properly stated a claim, but "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering a Rule 12(b)(6) motion, a court must accept all factual allegations in the complaint as true.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  To survive a motion to dismiss, a complaint must contain "only enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and if there is "more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### III. SUFFICIENCY OF THE ALLEGATIONS.

As noted, there are separate Complaints on behalf of R.K.W. and the estate of her mother Brooke Winek, which have been considered together for the purposes of this opinion.  The counts in each Complaint are similar and allege the same set of facts.

A.  Official Capacity Claims.

Andis asserts that sovereign immunity bars the actions against him in his official capacity.  I agree.

Official capacity suits against an individual are another way of suing the government entity itself.  *Andrews v. Daw*, 201 F.3d 521, 525 (4th Cir. 2000).  In Virginia, a suit against a sheriff acting in his official capacity for money damages is a suit against the Commonwealth, entitling the sheriff to immunity.  *Bland v. Roberts*, 730 F.3d 368, 389 (4th Cir. 2013).  Under Virginia law, a division of a government entity cannot be sued unless the legislature has vested it with the capacity to be sued.  *Graves v. Austin*, No. 4:12-CV-21, 2012 WL 6019099, at *3 (W.D. Va. Dec. 3, 2012).  The Code of Virginia does not provide that a sheriff's office is a separate legal entity that can be sued.  *Trantham v. Henry Cnty. Sheriff's Off.*, No. 4:10CV00058, 2011 WL 863498, at *5 (W.D. Va. Mar. 10, 2011) ("Local police and sheriff's departments in Virginia are 'non suis juris,' meaning they simply do not have the capacity to be sued."), *aff'd*, 435 F. App'x 230 (4th Cir. 2011) (unpublished).

Because suits against Virginia sheriffs' offices are considered suits against the Commonwealth, any claims against Andis in his official capacity must be dismissed.  *Bell v. City of Roanoke Sheriff's Off.*, No. 7:09-CV-00214, 2009 WL 5083459, at *2 (W.D. Va. Dec. 23, 2009) ("It is well settled that, in Virginia, suits against a Sheriff

or her deputies in their official capacities, as well as suits against the Sheriff's Office, are considered suits against the state.").

## B. Failure to Screen under 42 U.S.C. § 1983: Count I in both Complaints.

The plaintiff brings a civil rights action against Andis under 42 U.S.C. § 1983, alleging that Andis was deliberately indifferent to an obvious consequence of the failure to screen Edwards properly. As discussed above, because sheriffs in Virginia are immune to official capacity suits, I will construe this claim as one against Andis in his individual capacity.

A claim under 42 U.S.C. § 1983 requires proof of the following three elements: "(1) the deprivation of a right secured by the Constitution or a federal statute; (2) by a person; (3) acting under color of state law." *Jenkins v. Medford*, 119 F.3d 1156, 1159–60 (4th Cir. 1997). A § 1983 failure to screen claim based on a "single hiring decision" is only viable if the employer "was deliberately indifferent towards how its hiring decision could lead to a deprivation of federal rights." *Tupea v. Kline*, 736 F. Supp. 3d 381, 386 (E.D. Va. 2024) (internal quotation marks and citations omitted). A failure to conduct an adequate background check can constitute deliberate indifference "'where adequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right.'" *Slone ex rel. Hudson v. Racer*, No. 3:23-0636,

– 9 –

2024 WL 4314898, at *7 (S.D.W. Va. Sept. 26, 2024) (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 411 (1997).

To ensure that liability for a hiring decision does not "collapse[ ] into *respondeat superior* liability, a court must carefully test the link between the policymaker's inadequate decision and the particular injury alleged." *Bd. of Cnty. Comm'rs of Bryan Cnty.* 520 U.S. at 410. Liability depends "on a finding *that* this officer was highly likely to inflict the *particular* injury suffered by the plaintiff." *Id.* at 412. The "mere probability that any officer inadequately screened will inflict any constitutional injury" does not suffice. *Id.*

Here, the connection between any hiring decision and the acts Edwards undertook is not strong enough to state a § 1983 claim. The plaintiff argues that "the plainly obvious consequence of hiring Edwards" was a violation of the Fourteenth Amendment rights of the deceased. Compl. 11, Dkt. No. 1. While Edwards was certainly not qualified to work as a deputy, the specific decision to hire him was not highly likely to lead to the brutal killings alleged here. Edwards struggled with psychiatric issues and had a propensity for violence. A reasonable employer could have concluded that he was unfit for the office. However, I do not find that the risk Edwards would use his service weapon and badge to murder a family and kidnap a child, all outside his authorized police duties, is "plainly obvious." Thus, the strong

nexus between the act taken under color of state law and the particular constitutional injury inflicted is not present here.

### C.  Negligent Hiring: Count IV in 1:24CV00031 and Count X in 1:24CV00032

The plaintiff brings claims against Andis for negligent hiring under Virginia law.[3]  Andis argues that Virginia sovereign immunity doctrine bars ordinary negligence claims against him.  I agree.

"[O]rdinary negligence claims cannot lie against a law enforcement officer who was engaged in an 'essential governmental function involving the exercise of discretion and judgment' at the time of the act alleged to be negligent."  *Savage v. Cnty. of Stafford*, 754 F. Supp. 2d 809, 817 (E.D. Va. 2010) (internal quotation marks and citation omitted).  To determine whether sovereign immunity applies under Virginia law, courts apply a four-factor test.  The factors are (1) the nature of the function performed; (2) the extent of the state's interest and involvement in the function; (3) the degree of control exercised by the state over the employee; and (4) whether the act complained of involved the use of judgment and discretion.  *Verry v. Barry*, No. 2005-7454, 2006 WL 2578368, at *2 (Va. Cir. Ct. July 27, 2006) (citing *Messina v. Burden*, 321 S.E. 2d 657, 663 (Va. 1984)).  To determine whether Andis enjoys sovereign immunity as to ordinary negligence claims, I will consider

---

[3]  The Court has supplemental subject-matter jurisdiction under 28 U.S.C. 1367(a) of state law claims that arise out of the same case or controversy.

the four-factor test set forth above.

The function at issue here is the screening and hiring of a deputy. Though the state has an interest in a qualified sheriff's office, nothing here indicates that the Commonwealth of Virginia was involved in the hiring process or that other state employees had control over the ultimate hiring decision. The allegations in the Complaints indicate that Smarr was responsible for the background check process and was tasked with making determinations about Edwards' fitness, which requires the use of judgment and discretion. Because Andis and Smarr made the determination to hire Edwards with limited state involvement, Andis is entitled to sovereign immunity as to the ordinary negligence claims in the Complaints.

In her response to Andis' Motions to Dismiss, the plaintiff mentions gross negligence. Under Virginia law, a state agent who is entitled to sovereign immunity is not completely immune from civil suit. *Colby v. Boyden*, 400 S.E.2d 184, 186 (Va. 1991). Sovereign immunity will not protect an agent whose actions were a degree of negligence beyond ordinary negligence. *Id*. However, a claim of gross negligence is not asserted in a plausible way in the Complaints and cannot be added in a later brief. *McCann-McCalpine v. McElligott*, No. BAH-22-2195, 2025 WL 2712642, at *10 n.9 (D. Md. Sept. 23, 2025).

### D.  Vicarious Liability: Count V in 1:24CV00031 and Count VIII in 1:24CV00032.

The plaintiff contends that Sheriff Andis is vicariously liable for Edwards' crimes of assault, battery, false imprisonment and abduction.  Vicarious liability is a superior's automatic liability for the unlawful actions of subordinates, irrespective of the superior's culpability.  In Virginia, "[t]he acts and defaults of the deputy . . . are considered in law as the acts and defaults of the sheriff, who is liable therefor in the same form of action as if they had been actually committed by himself." *Agyeman v. Pierce*, No. LT-1347-4, 1991 WL 835356, at *2 (Va. Cir. Ct. Dec. 11, 1991) (quoting *Mosby v. Mosby*, 50 Va. (9 Gratt.) 584, 603 (1853)).  As a result, "a Sheriff may be held responsible for the acts of his deputies."  *Verry*, 2006 WL 2578368, at *1.

In Virginia, vicarious liability applies based on the actions of a subordinate when "the *service itself*, in which the tortious act was done, was within the ordinary course of the employer's business, meaning when the employee committed the tort while performing a normal function of his assigned job." *Our Lady of Peace, Inc. v. Morgan*, 832 S.E.2d 15, 23 (Va. 2019) (internal quotation marks and citation omitted).

The plaintiff allege that Edwards conducted his crimes "while in the course and scope of his employment with Defendant." Compl. 19, DKT. No. 1.  However, though Edwards impersonated a law enforcement officer to enter Brooke's home,

– 13 –

his conduct was not in the course or scope of his employment. At the time he committed his crimes, he was not engaged in any law enforcement duties. Thus, the conduct here cannot be said to be in the ordinary course of the Sheriff's business or a normal function of Edwards' job.

## IV. CONCLUSION.

For the foregoing reasons, defendant Andis' Motions to Dismiss, Dkt. No. 20 in Case No. 1:24CV00031, and Dkt. No. 22 in Case No. 1:24CV00032, are GRANTED and the claims against defendant Andis are DISMISSED without prejudice.

It is so **ORDERED**.

ENTER: September 30, 2025

/s/  JAMES P. JONES
Senior United States District Judge